UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ANTHONY MARTIN, | ) | **JURY TRIAL DEMANDED** |
| Plaintiff | ) | |
| v. | ) | Civil Action No.: |
| WASTE CONNECTIONS OF NEW YORK, INC., WASTE CONNECTIONS, INC., AND WASTE CONNECTIONS US, INC. | ) | _____ |
| Defendants | ) | |

## COMPLAINT AND JURY DEMAND

## PARTIES

1.      The plaintiff, Anthony Martin ("Mr. Martin" or "Plaintiff"), is a male resident of the State of New York residing at 1534 Brentwood Road, Bayshore, New York 11706.  Bayshore is located in Suffolk County, New York.

2.      Defendant Waste Connections of New York, Inc. ("Waste NY") is a foreign company incorporated, operating, and headquartered in the state of New Jersey. The Company's principal office is located at 120 Wood Ave S, Suite 302, Iselin, New Jersey 08830-2709.

3.      Defendant, Waste Connections, Inc. ("Waste Inc.") is a foreign company incorporated, operating, and headquartered in the state of Texas. The Company's principal office is located at 3 Waterway Square Place, Suite 110, Spring, Texas 77380.

4.      Defendant, Waste Connections US, Inc. ("Waste US") is a domestic for-profit company incorporated, operating, and headquartered in the state of New York. The Company's principal office is located at 2630 Park Avenue, New York, New York 10451.

## JURISDICTION AND VENUE

5.      This court has subject matter jurisdiction under 28 U.S.C. § 1331 because Mr. Martin has brought claims pursuant to the Family and Medical Leave Act ("FMLA") 29 U.S.C. §2615, the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12101 et seq., the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §§621, and 42 U.S.C. 1981. The court may exercise supplemental jurisdiction over Mr. Martin's state law claims and city law claims. 28 U.S.C. §1367.

6.      Venue is appropriate in the Southern District of New York as the Company's acts and omissions giving rise to the claims in this Complaint occurred in the Southern District of New York.  Indeed, Mr. Martin worked for the Defendants, and was fired by the Defendants, within New York County, which is in the Southern District of New York.

7.      This court has personal jurisdiction over Waste NY because Waste NY has purposefully availed itself of New York law by operating a business in New York, transacting business in New York, and employing employees (including, during the times relevant to this Complaint, Mr. Martin) in New York at the address of 2630 Park Avenue, New York, New York 10451. Indeed, the Plaintiff was employed by Waste NY in the State of New York, was managed by Waste NY in the State of New York and was terminated by Waste NY in the State of New York. Indeed, Waste NY's regional office is in New York (Brooklyn, NY, Kings County), and it has registered with the State of New York as a domestic corporation doing business in the State

of New York, and the Plaintiff's claims stem from Waste NY's contacts with the State of New York.

8.      This court has personal jurisdiction over Waste US because Waste US has purposefully availed itself of New York law by operating a business in New York, transacting business in New York, and employing employees (including, during the times relevant to this Complaint, Mr. Martin) in New York at the address of 2630 Park Avenue, New York, New York 10451. Indeed, the Plaintiff was employed by Waste US in the State of New York, was managed by Waste NY in the State of New York and was terminated by Waste NY in the State of New York. Indeed, Waste US's regional office is in New York and the Plaintiff's claims stem from Waste US's contacts with the State of New York.

9.      This court has personal jurisdiction over Waste Inc. because Waste Inc. has purposefully availed itself of New York law by operating a business in New York, transacting business in New York, and employing employees (including, during the times relevant to this Complaint, Mr. Martin) in New York at the address of 2630 Park Avenue, New York, New York 10451. Indeed, the Plaintiff was employed by Waste Inc. in the State of New York, was managed by Waste Inc. in the State of New York and was terminated by Waste Inc. in the State of New York. Indeed, Waste Inc.'s regional office is in New York (Brooklyn, New York, Kings County) and the Plaintiff's claims stem from Waste Inc.'s contacts with the State of New York.

## STATEMENT OF FACTS

10.     Mr. Martin is 56 years old and was born in 1969.

11.     In or around 1999, Mr. Martin was hired as a driver by Waste Connections of New York, Inc. ("Waste NY") in Brooklyn, New York.

12.     At all relevant times, Waste NY was a wholly owned subsidiary of Waste Inc.

and Waste Connections US, Inc. (Waste US), which was largely run by the parent entity, and which controlled the terms and conditions of Mr. Martin's employment (Waste Connections of NY, Waste Inc., and Waste US each individually and all collectively, the "Company").

13. Indeed, Mr. Martin was paid by Waste US and eventually terminated by Waste US, Waste Inc., and Waste NY. Mr. Martin reported to managers from Waste NY and worked at the Waste Connections NY facilities in New York, New York.

14. At all relevant times, Waste US, Waste NY, and Waste Inc. (each individually and all collectively) shared management, control over operations, supervisory authority, and the power to hire or fire Mr. Martin. Indeed, Mr. Martin was paid by Waste US, worked at facilities owned by Waste US and Waste Inc., and followed a handbook created by Waste US. Further, Mr. Martin reported to managers at Waste NY. Waste NY employees managed, directed, and supervised Mr. Martin during his employment (as did employees from Waste Inc.)

15. Thus, at all relevant times, Waste Connections of New York, Waste US, and Waste Inc. (each individually and all collectively) were Mr. Martin's joint employers.

16. At all relevant times, the Company (each individually and all collectively) employed 20 or more individuals for 20 or more calendar weeks within the last 12 months.

17. As such, the Company was an employer under the Americans with Disabilities Act("ADA"), the New York City Human Rights Law ("NYCHRL"), and the New York State Human Rights Law ("NYSHRL").

18. At all relevant times, the Company employed 50 or more employees for 20 or more weeks during the preceding calendar year.

19. Accordingly, at all relevant times, the Company was an employer under the Family and Medical Leave Act ("FMLA").

20.     At all relevant times, Mr. Martin was a qualified employee, and his job performance was satisfactory.

21.     Mr. Martin is an African American individual with black skin color.

22.     Importantly, when Mr. Martin was hired, he was around 25 years old.

23.     When Mr. Martin was hired, his direct supervisor was Joe Laverdy ("Laverdy"), Eastern Regional Manager.

24.     Upon information and belief, Laverdy is not disabled, is not regarded by the Company as disabled, and has not requested or utilized reasonable disability-related accommodations.

25.     Indeed, based on Mr. Martin's satisfactory performance, he received numerous promotions throughout his employment.

26.     In or around 2010, Laverdy left the Company, and Mr. Martin's direct supervisor became Joey Masiello ("Masiello"), Eastern Regional Manager.

27.     Upon information and belief, Masiello is not disabled, is not regarded by the Company as disabled, and has not requested or utilized reasonable disability-related accommodations.

28.     In or around 2019, Mr. Martin began experiencing pain in both of his knees while walking, standing, and bending (which was later diagnosed as bilateral primary osteoarthritis of the knees (a degenerative joint disease effecting both knees) ("osteoarthritis") and chronic lumbar radiculopathy ("sciatica")).

29.     Mr. Martin's osteoarthritis is an impairment which significantly limits a number of his major life activities, including, but not limited to, his ability to perform strenuous exercise, walking, running, bending, lifting, and standing. Further, Mr. Martin's osteoarthritis is also an

impairment which substantially limits one or more of his major bodily functions, including, but not limited to the functioning of his musculoskeletal and nervous systems.

30.    Accordingly, at all relevant times, Mr. Martin's osteoarthritis was a disability, and he was a qualified individual with a disability under Federal, State, and City law.

31.    Mr. Martin's sciatica is an impairment which significantly limits a number of his major life activities, including, but not limited to, his ability to perform strenuous exercise, walking, running, bending, lifting, and standing. Further, Mr. Martin's sciatica is also an impairment which substantially limits one or more of his major bodily functions, including, but not limited to the functioning of his musculoskeletal and nervous systems.

32.    Accordingly, at all relevant times, Mr. Martin's sciatica was a disability, and he was a qualified individual with a disability under Federal, State, and City law.

33.    Notably, Mr. Martin initially believed the pain in his knees would subside, so he continued working and did not seek medical treatment at that time.

34.    However, the pain persisted and worsened.   In or around January 2022, Mr. Martin experienced a significant flare up of his pain-related symptoms, including pain in both his knees and difficulty walking and standing.

35.    Accordingly, after his shift, Mr. Martin attended an appointment with his doctor regarding his flare up of painful knee symptoms, and his doctor diagnosed him with bilateral primary osteoarthritis in both of his knees and lumbar radiculopathy.

36.    Furthermore, because his knees had degenerated substantially and permanently due to his disability, Mr. Martin's doctor recommended that he undergo double knee replacement surgery to treat his disability symptoms and recover.  Mr. Martin was scheduled to have knee

replacement surgery on one of his knees take place on or around June 22, 2022, and to take place on the other knee in or around mid-July, 2022.

37.    The next day, upon Mr. Martin's arrival to work, he contacted Masiello and disclosed his osteoarthritis and sciatica diagnosis, and the related recommendation of his doctor that he undergo knee replacement surgeries in June and July 2022, and accordingly requested the reasonable disability-related accommodation of taking a medical leave of approximately three months to undergo surgery and recover, starting on or around June 22, 2022, and returning in or around September 2022, per his doctor's recommendation.

38.    At all relevant times, Mr. Martin had been an employee for at least 12 months and had worked in excess of 1250 hours during the preceding 12-month period. As such, Mr. Martin was an eligible employee for FMLA leave.

39.    Mr. Martin's osteoarthritis and related knee conditions were a serious health condition that caused periods of incapacity, required continuing treatment, and served as a legitimate basis for protected leave for FMLA.

40.    As such, Mr. Martin was an eligible employee entitled to leave protected under the FMLA.

41.    Indeed, Mr. Martin's disability-related accommodation request was also a request for leave protected under the FMLA.

42.    Masiello approved this request.

43.    In or around May 2022, the Company hired Matt Moses ("Moses"), to take over as head supervisor. Accordingly, at that point, Moses became Mr. Martin's direct supervisor.

44. Upon information and belief, during the full period of Mr. Martin's employment, Moses was not disabled, was not regarded by the Company as disabled, and did not request or utilize reasonable disability-related accommodations.

45. Moses is Hispanic with lighter skin color that Mr. Martin.

46. Moses is at least 10 years or more younger than Mr. Martin.

47. Shortly after Moses became Mr. Martin's direct supervisor, Mr. Martin disclosed his osteoarthritis to Moses and informed Moses that he (Mr. Martin) needed to undergo medically necessary knee replacement surgery to manage his disability-related symptoms, and reiterated his request for the reasonable disability-related accommodation of taking a medical leave of approximately three months to undergo this double knee surgery and recover.

48. Moses seemingly affirmed the Company's approval of this request.

49. On or around June 22, 2022, Mr. Martin began his pre-approved medical leave and underwent surgery to treat his osteoarthritis on his right knee.

50. On or around July 27, 2022, Mr. Martin underwent surgery on his left knee.

51. In or around the beginning of September 2022, Mr. Martin attended a follow-up appointment with his doctor where it was discovered that he had an infection in his right knee, and he subsequently needed to undergo a third surgery to clear the infection.

52. Furthermore, Mr. Martin's doctor recommended that he extend his medical leave by approximately three months to recover from this further disability-related surgery.

53. Later that day, Mr. Martin contacted Moses and requested the disability-related accommodation of extending his medical leave by approximately three months to recuperate from his surgery, per his doctor's recommendation.

54.     Moses did not indicate a problem with Mr. Martin's request, and Mr. Martin understood that his request for an extended leave had been approved.

55.     Accordingly, later that week, Mr. Martin underwent surgery to clear the infection in his knee.

56.     In or around the middle of December 2022, Mr. Martin attended a follow up appointment with his doctor during which his doctor conducted another examination and informed Mr. Martin that he had not adequately recovered from surgery and therefore recommended that Mr. Martin remain out of work for an additional five months to fully recover, until in or around May 2023.

57.     In or around December 2022, Mr. Martin contacted human resources at the Company, provided a further update on his osteoarthritis, knees surgeries, ongoing recovery, and doctor's recommended extension of leave, and requested the disability-related accommodation of extending his leave until around May 2023.

58.     Mr. Martin's request was approved.

59.     Mr. Martin's recovery continued and he made progress, although he continued to suffer symptoms of his disability and related surgeries and during all relevant times he remained disabled under the meaning of the law.

60.     In or around May 2023, Mr. Martin returned to work as scheduled.

61.     When Mr. Martin returned to work, he contacted Moses and disclosed that he was still walking with a noticeable limp, but informed Moses that he could still perform the essential functions of his position.

62.     Moses acknowledged Mr. Martin's disclosure, but seemed skeptical.

63.     Despite the skepticism of Moses, who seemed to look down on Mr. Martin for his limp, Mr. Martin successfully resumed his duties and performed all essential functions of his job at a fully satisfactory level.

64.     Shortly after his return from leave, the route Mr. Martin was assigned to started to become more difficult and tedious, as there were several stops and duties added to the route.

65.     As such, this route took Mr. Martin several more hours to complete than what was previously required.

66.     In or around July 2023, despite Mr. Martin's fully satisfactory performance, Moses and Eric (last name unknown "Eric"), supervisor, started berating Mr. Martin. Indeed, Eric falsely claimed that Mr. Martin was moving "too slow" (a clear reference to his limp) and that other employees could allegedly "do it faster" and Moses stated that if Mr. Martin did not complete his duties in the same amount time as the other employees with less difficult routes that Mr. Martin would not be paid for the additional time.

67.     Upon information and belief, during the full period of Mr. Martin's employment, Eric was not disabled, was not regarded by the Company as disabled, and did not request or utilize reasonable disability-related accommodations.

68.     Eric is a Caucasian individual with white skin color.

69.     Eric is at least 20 years or more younger than Mr. Martin.

70.     Mr. Martin explained to Moses and Eric that his route assignment was far more difficult and therefore required more time to be completed. Indeed, Mr. Martin overall was working at a pace equivalent to that of other employees, and so that accusation that he was "too slow," was clearly a biased fabrication.

71. Accordingly, at that time, Mr. Martin requested the accommodation from Moses and Eric that he be placed on a different route, as the intensity of the route he was assigned was causing his disability-related exacerbated, including knee pain and a more noticeable limp.

72. In response, Eric stated that if Mr. Martin didn't work the route he was assigned to then he would not be allowed to work at all.

73. In addition, around this time, Victor (last name unknown "Victor"), shop steward, approached Mr. Martin and stated that Eric had told him that nobody wanted to work with Mr. Martin because he was "too slow" (a direct reference to his limp and disability-related symptoms) and that Moses stated that Mr. Martin should find a more "suitable" job.

74. Upon information and belief, during the full period of Mr. Martin's employment, Victor was not disabled, was not regarded by the Company as disabled, and did not request or utilize reasonable disability-related accommodations.

75. Moses, Eric, and Alan (last name unknown "Alan"), another supervisor, continued to nitpick Mr. Martin's work stating that he was "too slow," that he parked the truck in the wrong spots, and that no one wanted to work with him.

76. Upon information and belief, during the full period of Mr. Martin's employment, Alan was not disabled, was not regarded by the Company as disabled, and did not request or utilize reasonable disability-related accommodations.

77. Alan is non-African American with lighter skin color than Mr. Martin.

78. Alan is at least 20 years or more younger than Mr. Martin.

79. Importantly, Mr. Martin did not park in the wrong spot, which he confirmed with the head mechanic, Stanley (last name unknown "Stanley"). Indeed, Stanley stated that Mr. Martin could park the truck anywhere as long as it did not block the front entrance.

80. Upon information and belief, during the full period of Mr. Martin's employment, Stanley was not disabled, was not regarded by the Company as disabled, and did not request or utilize reasonable disability-related accommodations.

81. Stanley is a Caucasian individual with white skin color.

82. On occasion, after being harassed by Moses, Eric, and Alan, Mr. Martin approached Victor (last name unknown "Victor"), shop steward, and raised protected concerns that Moses, Eric, and Alan were harassing him in a seemingly discriminatory and retaliatory manner based on his age, disabilities, and for engaging in protected activities.

83. In response, Victor told Mr. Martin that he would handle it.

84. Importantly, throughout his employment, Mr. Martin noticed that the non-African American employees with lighter skin color were often treated more favorably than African American employees with dark skin color.

85. Indeed, this was emphasized in Fall 2024, when a white driver (name unknown) crashed a truck, and instead an African American driver with dark skin color was blamed and terminated while the white driver was not disciplined and remained employed.

86. This preferential treatment was also displayed through Moses' interactions. Indeed, Moses often interacted with non-African American employees with lighter skin, joking with them and engaging in personal conversations, while he only spoke abruptly and in regard to work when speaking with African American employees with dark skin color, including Mr. Martin.

87. In or around January 2024, Moses approached Mr. Martin and started berating him and curtly claimed Mr. Martin was "too slow" and threatened to replace him.

88. Notably, Moses did not call non-disabled, younger employees "too slow."

89.    Importantly, Mr. Martin was not moving "too slow" and was, in fact, completing his work at the same or similar pace as the younger employees.

90.    It was clear that Moses was making a discriminatory reference about common stereotypes that older individuals with arthritis and a limp (like Mr. Martin) are less capable, even though it was not true.

91.    Mr. Martin then raised protected concerns to Moses that his comments were discriminatory and that Mr. Martin was being singled out compared to younger, non-disabled, younger employees.

92.    Moses dismissed Mr. Martin's concerns and walked away.

93.    In or around March 2024, Mr. Martin submitted a request to take a vacation in or around the first week of July 2024.

94.    When Mr. Martin was informed that this week was not available, he requested to be informed if his desired dates did become available to utilize as vacation time.  This was a standard request and the Company in the past had routinely complied with such requests from many employees.

95.    Upon information and belief, Mr. Martin's requested time off was, in fact, available and the Company improperly treating Mr. Martin worse than others as they were denying his vacation request in a discriminatory and/or retaliatory manner.

96.    In or around the end of May 2024, Eric contacted Mr. Martin and started berating him and claiming that he was not a good "fit" for his position and further claimed that "no one wanted to work with [him]."  These assertions were false and Eric gave few to no details to support his harassing assertions, which appeared to be fabricated.

97.     Importantly, Eric's comments (repeatedly accusing only Mr. Martin of being slower than others when he was not) were clearly based on discriminatory stereotypes regarding older people and/or an older person with disabilities (including a limp), like Mr. Martin.

98.     Notably, Eric appeared clearly biased against Mr. Martin based on the limp and other effects of his disabilities, as he (Eric) was seemingly favoring the younger employees. Indeed, Eric was treating Mr. Martin, an older, disabled employee, in a disparate manner based on his continued allegations that Mr. Martin was working slowly, despite the fact that Mr. Martin was working at the same rate of speed as his younger colleagues.

99.     In or around June 2024, Eddie (last name unknown "Eddie"), supervisor, contacted Mr. Martin and asked if he still wanted to utilize the vacation time he requested for July 2024. In response, Mr. Martin confirmed that he was indeed going to utilize his vacation during the first week of July 2024, and it was his understanding that this vacation time had now been approved.

100.    Upon information and belief, during the full period of Mr. Martin's employment, Eddie was not disabled, was not regarded by the Company as disabled, and did not request or utilize reasonable disability-related accommodations.

101.    Eddie is a Caucasian individual with white skin color.

102.    On or around July 1, 2024, Mr. Martin began his pre-approved vacation. Indeed, that weekend Mr. Martin embarked on a 5-day cruise off the coast of Florida and was out at sea.

103.    That day, Victor contacted Mr. Martin inquiring about his whereabouts, to which Mr. Martin confirmed that he was on a pre-approved vacation.

104.    In response, Victor indicated that there had somehow been a mistake processing the dates of Mr. Martin's vacation.

105. Mr. Martin told Victor that he was on a 5-day cruise and was unable to return immediately.

106. Following this Mr. Martin called Moses to explain the situation and reiterated that he had been approved for vacation for this time. Mr. Martin further conveyed that he had accrued enough paid time off to cover his absences. Although it appeared that the Company was improperly targeting him for ill treatment, Mr. Martin stated that he could use his paid time off for his vacation time.

107. Moses did not indicate a problem with this and stated that they would handle it when Mr. Martin returned. Notably, the Company did not order Mr. Martin to return to work and Mr. Martin understood that he was allowed to finish his vacation, but would just need to use his accrued paid time off (distinct from his accrued vacation time) to cover the time off.

108. Indeed, Mr. Martin had enough accrued unused vacation time and/or other time off to cover this time off.

109. Notably, it was not possible for Mr. Martin to leave his vacation at that time as he had already embarked on a 5-day cruise and was out at sea.

110. On or around July 4, 2024, Mr. Martin returned home. Although he was not scheduled to work until July 7, 2024, Mr. Martin contacted Victor to see if management wanted him to return earlier than anticipated.

111. In response, Victor told Mr. Martin that he was suspended pending termination allegedly based on four unapproved absences, which were the days of his pre-approved vacation.

112. Shortly after this phone call, Mr. Martin spoke with Josie (last name unknown "Josie"), secretary, who told Mr. Martin that Alan had approached her and stated, "we finally got him" in reference to suspending Mr. Martin.

113. Upon information and belief, during the full period of Mr. Martin's employment, Josie was not disabled, was not regarded by the Company as disabled, and did not request or utilize reasonable disability-related accommodations.

114. Josie is non-African American with lighter skin color than Mr. Martin.

115. Josie is at least 30 years or more younger than Mr. Martin.

116. Accordingly, it was clear that the Company was actively trying to find reasons to suspend and terminate Mr. Martin in a discriminatory and retaliatory manner.

117. On or around July 17, 2024, Victor contacted Mr. Martin and stated that he was being terminated. He asserted that the Company regarded Mr. Martin's use of vacation for the first week of July 2024 was "unscheduled" and was therefore cause for termination.

118. Thus, on or around July 17, 2024, Mr. Martin was involuntarily terminated.

119. Notably, the Company has a progressive discipline policy which allows for, at minimum, a written warning, final written warning, and suspension, all prior to termination. The Company failed to follow its standard policy of progressive performance management or progressive discipline steps, which included one or more written warnings (even if sometimes characterized as verbal warnings), a final written warning, and a suspension, all prior to termination.

120. Notably, Mr. Martin had not received any warnings prior to the incident that the Company claimed caused his termination and as such, the Company skipped one or more steps when they summarily terminated Mr. Martin.

121. Importantly, Harry (last name unknown "Harry") stormed off the job without permission, and was not disciplined or terminated.

122.     Upon information and belief, during the full period of Mr. Martin's employment, Harry was not disabled, was not regarded by the Company as disabled, and did not request or utilize reasonable disability-related accommodations.

123.     Harry is Caucasian with white skin color.

124.     Upon information and belief, Mr. Martin was replaced by a younger, non-disabled individual.

125.     Notably, around this same time, one of Mr. Martin's colleagues named Rodney (last name unknown "Rodney") was also terminated for allegations that were untrue.

126.     Importantly, Rodney is an African American individual with dark skin color who is approximately the same (older) age as Mr. Martin.

127.     Accordingly, it appeared that the Company was actively purging older, disabled, African American employees.

128.     On or around December 31, 2024, Mr. Martin timely filed a Charge of Discrimination (the "Charge") with the New York Division on Human Rights (the "NYDHR") (Charge Number: 10244031) and cross-filed with the Equal Employment Opportunity Commission (the "EEOC") (Charge Number: 16GC502284).

129.     On or around March 16, 2026, Mr. Martin notified the NYDHR of his intent to pursue this matter in Court and requested an administrative convenience dismissal.

130.     On or around April 1, 2026, the NYDHR issued an administrative convenience dismissal permitting Mr. Martin to proceed in court.

131.     On or around July 6, 2026, the EEOC issued Mr. Martin with a right to sue letter.

132.     This lawsuit is timely filed.

**COUNT I**

**(Retaliation for Exercising Rights Under the Family and Medical Leave Act – 29 U.S.C. § 2615)**

**Plaintiff v. All Defendants (Waste Connections NY, Waste US, and Waste Inc.)**

133.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

134.    Importantly, at all relevant times, Waste NY, Waste US, and Waste Inc. jointly employed Mr. Martin.

135.    At all relevant times, Waste NY, Waste US, and Waste Inc. were integrated employers as defined by the FMLA.  Indeed, the companies had common management (including the same CEO), interrelated operations, centralized control of labor relations, and had common ownership.

136.    During all relevant times, the Company (including each of Waste NY, Waste US, and Waste Inc.) was engaged in an industry affecting commerce and employed 50 or more employees for 20 or more calendar work weeks in each current and/or preceding calendar year.

137.    As such, the Company is (and at all relevant times was) an employer under the FMLA.

138.    In addition, the Company employed 50 or more employees within 75 miles of Mr. Martin's worksite.

139.    During all relevant periods, Mr. Martin was an eligible employee under the FMLA because he had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

140.    Mr. Martin suffered from one or more serious health conditions, including chronic osteoarthritis, chronic knee impairments, and the effects of knee surgery, which required continuing care from a medical provider and hospitalization.

141.    Mr. Martin requested and utilized FMLA leave, including in the form of continuous and intermitte4nt FMLA leave, related to the need to take time off for his own serious health conditions.

142.    Defendants, including by and through their agents, retaliated and/or discriminated against Mr. Martin for requesting and/or utilizing FMLA leave by subjecting Mr. Martin to adverse actions, including, but not limited to, a hostile and harassing work environment, criticizing and/or reprimanding Mr. Martin seemingly in retaliation for requesting and/or utilizing FMLA leave, and the termination of the Plaintiff's employment.

143.    Defendants' actions, including their violations of the FMLA, were willful and in bad faith.

144.    As a direct and proximate result of the Defendants' violation of the FMLA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

145.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorney's fees, and costs.

**COUNT II**

**(Disability Discrimination and Failure to Accommodate in Violation of the Americans With Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Plaintiff v. All Defendants (Waste Connections NY, Waste US, and Waste Inc.)**

146.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

147.    At all relevant times, the Company employed 15 or more employees for 20 or more weeks during the preceding 12 calendar months.

148.    As such, at all relevant times, the Company was an employer under the Americans with Disabilities Act ("ADA").

149.    Mr. Martin's chronic osteoarthritis is an impairment which significantly limits a number of his major life activities, including, but not limited to, his ability to perform strenuous exercise, walking, running, bending, lifting, and standing. Further, Mr. Martin's osteoarthritis is also an impairment which substantially limits one or more of his major bodily functions, including, but not limited to the functioning of his musculoskeletal and nervous systems.

150.    Accordingly, at all relevant time, Mr. Martin's osteoarthritis was a disability under the ADA.

151.    At all relevant times, Mr. Martin was a qualified individual with a disability and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.  Indeed, Mr. Martin performed his job at a satisfactory level throughout his employment.

152.    Mr. Martin disclosed his disabilities to the Defendants and/or the Defendants were aware of Mr. Martin's disabilities and/or the Company regarded Mr. Martin as disabled.

153.     Mr. Martin requested disability-related reasonable accommodations that assisted him in performing the essential functions of his job. These requested reasonable accommodations included a continuous medical leave to undergo multiple medically necessary surgeries and to recover, intermittent medical leave, and assistance with performing his job duties, as well as being restored to his position at the end of this leave.

154.     The Company, by and through its agents, discriminated against Mr. Martin due to his disability(ies) by subjecting Mr. Martin to a harassing and otherwise hostile work environment, criticizing and/or reprimanding, improperly denying vacation time in a disparate manner, improperly denying his disability-related accommodation request, and the termination of Mr. Martin's employment, in a discriminatory manner based on Plaintiff's disability, and/or because Mr. Martin requested and utilized disability-related accommodations, and/or because Mr. Martin was an older and disabled employee ("age plus" discrimination).

155.     The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Martin.

156.     As a direct and proximate result of the Company's violation of the ADA, Mr. Martin has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

157.     Mr. Martin seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated damages, punitive damages, attorneys' fees, interest, and costs.

## COUNT III

**(Disability Discrimination and Failure to Accommodate under New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (Waste NY, Waste US, and Waste Inc.)**

158.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

159.    Mr. Martin's chronic osteoarthritis is an impairment which significantly limits a number of his major life activities, including, but not limited to, his ability to perform strenuous exercise, walking, running, bending, lifting, and standing. Further, Mr. Martin's osteoarthritis is also an impairment which substantially limits one or more of his major bodily functions, including, but not limited to the functioning of his musculoskeletal and nervous systems.

160.    At all relevant times, the Company was an employer as defined by state anti-discrimination laws, including the New York State Human Rights Law ("NYSHRL").

161.    At all relevant times, Mr. Martin was a qualified individual and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

162.    Mr. Martin disclosed his disabilities to Defendants, Defendants were aware of Mr. Martin's disabilities, and/or Defendants regarded Mr. Martin as disabled.

163.    Mr. Martin requested disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, a continuous medical leave to undergo

multiple medically necessary surgeries and to recover, intermittent medical leave, and assistance with performing his job duties, as well as being restored to his position at the end of this leave.

164. Mr. Martin's requested disability-related accommodations did not pose an undue burden on the Company.

165. The Company, by and through its agents, discriminated against Mr. Martin due to his disability(ies) by subjecting Mr. Martin to a harassing and otherwise hostile work environment, criticizing and/or reprimanding, improperly denying vacation time in a disparate manner, improperly denying his disability-related accommodation request, and the termination of Mr. Martin's employment, in a discriminatory manner based on Plaintiff's disability, and/or because Mr. Martin requested and utilized disability-related accommodations, and/or because Mr. Martin was an older and disabled employee ("age plus" discrimination).

166. Upon information and belief, the Company replaced Mr. Martin with a lesser or similarly qualified, non-disabled employee.

167. The Company's actions were wanton, malicious, and/or oppressive.

168. The Company acted willfully and/or with reckless disregard to the state protected rights of Mr. Martin.

169. As a direct and proximate result of the Company's violation of the NYSHRL, Mr. Martin has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

170. The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory

damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT IV

**(Disability Discrimination and Failure to Accommodate in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (Waste NY, Waste US, and Waste Inc.)**

171.    Mr. Martin incorporates all paragraphs above and below as if set forth fully herein.

172.    At all relevant times, the Company (including Waste NY and Waste Inc. individually and collectively) employed 4 or more employees.

173.    As such, the Company is an employer under the definition of Title 8 of the Administrative Code of the City of New York ("NYCHRL").

174.    At all relevant times, Mr. Martin's osteoarthritis is an impairment which significantly limits his major life activities, including, but not limited to, his ability to perform strenuous exercise, walking, and standing. Further, Mr. Martin's osteoarthritis is also an impairment which substantially limits one or more of his major bodily functions, including, but not limited to his musculoskeletal and nervous systems.

175.    At all relevant times, Mr. Martin was a qualified individual with a disability and was capable of performing the essential functions of his job with or without one or more reasonable accommodations. Indeed, Mr. Martin performed his job at a satisfactory level throughout his employment.

176. Mr. Martin disclosed his disability to the Defendants and/or the Defendants were aware of Mr. Martin's disabilities and/or the Company regarded Mr. Martin as disabled.

177. The Company, by and through its agents, discriminated against Mr. Martin due to his disability(ies) by subjecting Mr. Martin to a harassing and otherwise hostile work environment, criticizing and/or reprimanding, improperly denying vacation time in a disparate manner, improperly denying his disability-related accommodation request, and the termination of Mr. Martin's employment, in a discriminatory manner based on Plaintiff's disability, and/or because Mr. Martin requested and utilized disability-related accommodations, and/or because Mr. Martin was an older and disabled employee ("age plus" discrimination).

178. The Company's actions were willful, wanton, reckless, and/or involved conscious disregard of the rights of Mr. Martin and/or conduct so reckless to amount to such disregard.

179. As a direct and proximate result of the Company's violations of the NYCHRL, Mr. Martin has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary damages, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

180. Mr. Martin seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT V

**(Age Discrimination in Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et. seq.)**

**Plaintiff v. All Defendants (Waste NY, Waste US, and Waste Inc.)**

181.    Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

182.    At all relevant times, Mr. Martin was over 40 years old.

183.    During all relevant times, the Company was an employer under definition of the Age Discrimination in Employment Act, 29 U.S.C. §§621 et. seq. (hereinafter the "ADEA") because it employed more than 20 persons for 20 or more calendar weeks within the previous 12-month period.

184.    The Company, by and through its agents, harassed and discriminated against Mr. Martin with respect the terms, privileges, and/or condition of employment because of Mr. Martin's age (currently 56) and/or because he was an older, disabled employee ("age plus" discrimination).

185.    More specifically, the Company subjected Mr. Martin to adverse actions because of his age, including, but not limited to, subjecting Mr. Martin to a harassing and otherwise hostile work environment, criticizing and/or reprimanding, improperly denying vacation time in a disparate manner, and the termination of Mr. Martin's employment, in a discriminatory manner based on Plaintiff's age (almost 55 upon termination), and/or because Mr. Martin was an older and disabled employee ("age plus" discrimination), and/or terminating Mr. Martin's employment.

186.    The Company willfully violated the ADEA because the Company knew or should have known its conduct was prohibited by Federal law and/or the Company acted with malice and/or reckless indifference to the federally protected rights of Mr. Martin.

187.     As a direct and proximate result of the Company's violation of the ADEA, Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

188.     Plaintiff seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, other compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated damages, injury to reputation, diminished earning capacity, interest, attorney's fees, and costs.

## COUNT VI

**(Age Discrimination in Violation under the New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (Waste NY, Waste US, and Waste Inc.)**

189.     Mr. Martin incorporates all paragraphs above and below as if set forth fully herein.

190.     Importantly, at all relevant times, Waste NY and Waste Inc. jointly employed Mr. Martin.

191.     At all relevant times, the Company (including Waste NY and Waste Inc. individually and collectively) employed 1 or more employees.

192.     Accordingly, at all relevant times, the Company was an employer under the definition of the NYSHRL.

193.     At all relevant times, Mr. Martin was over 40 years old.

194. The Company, by and through its agents, harassed and discriminated against Mr. Martin with respect to the terms, conditions, or privileges of employment because of Mr. Martin's age (almost 55 at the time of termination) and/or because Mr. Martin was an older, disabled employee ("age plus" discrimination).

195. More specifically, the Company subjected Mr. Martin to adverse actions because of his age, including, but not limited to, subjecting Mr. Martin to a hostile and harassing work environment, criticizing and/or reprimanding, improperly denying vacation time in a disparate manner, and the termination of Mr. Martin's employment, in a discriminatory manner based on Plaintiff's age (almost 55 upon termination), and/or because Mr. Martin was an older and disabled employee ("age plus" discrimination).

196. The Company's actions against Mr. Martin, including its violations of the NYSHRL, were wanton, willful, and malicious.

197. The Company acted willfully and/or with reckless disregard to the state-protected rights of Mr. Martin.

198. As a direct and proximate result of the Defendants' violations of the NYSHRL, Mr. Martin has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary damages, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

199. Mr. Martin seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of

enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT VII

**(Age Discrimination in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (Waste NY, Waste US, and Waste Inc.)**

200.    Mr. Martin incorporates all paragraphs above and below as if set forth fully herein.

201.    At all relevant times, the Company (including Waste NY and Waste Inc. individually and collectively) employed 4 or more employees.

202.    As such, the Company is an employer under the definition of Title 8 of the Administrative Code of the City of New York ("NYCHRL").

203.    The Company subjected Mr. Martin to adverse actions in a discriminatory manner because of his age including, but not limited to, subjecting Mr. Martin to a harassing and otherwise hostile work environment, criticizing and/or reprimanding, improperly denying vacation time in a disparate manner, and the termination of Mr. Martin's employment, in a discriminatory manner based on Plaintiff's age (almost 55 upon termination), and/or because Mr. Martin was an older and disabled employee ("age plus" discrimination).

204.    The Company's actions were willful, wanton, reckless, and/or involved conscious disregard of the rights of Mr. Martin and/or conduct so reckless to amount to such disregard. As a direct and proximate result of the Company's violations of the NYCHRL, Mr. Martin has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary damages, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

205.    Mr. Martin seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT VIII

### (Race and Color Discrimination in Violation of 42 U.S.C. § 1981, *et seq.*)

### Plaintiff v. All Defendants (Waste NY, Waste US, and Waste Inc.)

206.    Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

207.    During all relevant periods, the Company was a person under the meaning of 42 U.S.C. § 1981, *et seq.* (hereinafter, "Section 1981").

208.    Mr. Martin is African American in terms of his race and brown in terms of his skin color.

209.    The Company, including, but not limited to, its agents, harassed and discriminated against Mr. Martin with respect to his terms, conditions, or privileges of employment, because of the Plaintiff's race and color.

210.    Additionally, the Company engaged in a pattern or practice of disparate treatment toward African American employees with brown skin color.

211.    More specifically, the Company subjected Mr. Martin to adverse actions, including, but not limited to, subjecting Mr. Martin to a harassing and otherwise hostile work environment, and/or terminating Mr. Martin's employment because of his race and/or color.

212.    Upon information and belief, the Company replaced Plaintiff with a lesser or similarly qualified non-African American employee.

213.    The Company, including through its agents and employees, committed a discriminatory act in a willful, wanton, and/or malicious manner.

214.    As a direct and proximate result of the Company's violation of Section 1981, Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

215.    Plaintiff seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, other compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, diminished earning capacity, interest, attorney's fees, and costs.

## COUNT IX

**(Race and Color Discrimination in Violation of the New York State Human Rights Law, Executive Article 15, Section 296))**

**Plaintiff v. All Defendants (Waste NY, Waste US, and Waste Inc.)**

216.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

217.    The Company is an employer under the New York State Human Rights Law (NYSHRL) because it employs four or more persons.

218.    Mr. Martin is African American in terms of his race and brown in terms of his skin color.

219.    Defendants harassed and discriminated against Mr. Martin with respect to his compensation, terms, conditions, or privileges of employment, because of Mr. Martin's race (African American) and/or color (brown).

220.    Additionally, the Defendants engaged in a pattern or practice of disparate treatment toward African American employees with brown skin color.

221.    Defendants subjected Mr. Martin to adverse actions, including, but not limited to, subjecting Mr. Martin to a harassing and otherwise hostile work environment, and/or terminating Mr. Martin's employment because of his race and/or color.

222.    The Defendants' actions were wanton, malicious, and/or oppressive.

223.    The Defendants acted willfully and/or with reckless disregard to the state protected rights of Mr. Martin.

224.    As a direct and proximate result of the Defendants' violation of the NYSHRL, Mr. Martin has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

225.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

**COUNT X**

**(Race and Color Discrimination in Violation of the New York City Human Rights Law, Executive Article 15, Section 296))**

**Plaintiff v. All Defendants (Waste NY, Waste US, and Waste Inc.)**

226.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

227.    The Company is an employer under the New York City Human Rights Law (NYCHRL) because it employs four or more persons.

228.    Mr. Martin is African American in terms of his race and brown in terms of his skin color.

229.    Defendants harassed and discriminated against Mr. Martin with respect to his compensation, terms, conditions, or privileges of employment, because of Mr. Martin's race (African American) and/or color (brown).

230.    Additionally, the Defendants engaged in a pattern or practice of disparate treatment toward African American employees with brown skin color.

231.    Defendants subjected Mr. Martin to adverse actions, including, but not limited to, subjecting Mr. Martin to a harassing and otherwise hostile work environment, and/or terminating Mr. Martin's employment because of his race and/or color.

232.    The Defendants' actions were wanton, malicious, and/or oppressive.

233.    The Defendants acted willfully and/or with reckless disregard to the city protected rights of Mr. Martin.

234.    As a direct and proximate result of the Defendants' violation of the NYCHRL, Mr. Martin has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

235.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT XI

**(Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**
**Plaintiff v. All Defendants (Waste NY, Waste US, and Waste Inc.)**

236.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

237.     Mr. Martin engaged in protected activity under the ADA, including, but not limited to, by (i) requesting and utilizing disability-related accommodations, and (ii) opposing, and raising protected concerns about, disability-related harassment and discrimination.

238.     The Company discriminated against and/or retaliated against Mr. Martin for engaging in activities protected under the ADA, by subjecting Mr. Martin to a hostile and harassing work environment, criticizing and/or reprimanding, improperly denying vacation time in a disparate manner, and the termination of Mr. Martin's employment, in retaliatory manner for raising protected concerns and requesting and/or utilizing disability-related accommodations.

239.     The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Martin's exercising of, or enjoyment of, one or more rights granted by the ADA.

240.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Martin.

241.    As a direct and proximate result of the Company's violation of the ADA, Mr. Martin has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

242.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT XII

**(Retaliation in Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et. seq.)**

**Plaintiff v. All Defendants (Waste NY, Waste US, and Waste Inc.)**

243.    Mr. Martin incorporates all paragraphs above and below as if set forth fully herein.

244.    Mr. Martin engaged in protected activity under the ADEA, including, but not limited to, (i) opposing, voicing protected concerns, and/or engaging in other protected activity regarding a hostile work environment based on age and/or (ii) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Defendant due to Mr. Martin's age.

245.    The Defendant discriminated against and/or retaliated against Mr. Martin for opposing, voicing protected concerns, and/or engaging in other protected activity related to one

or more practices made unlawful by the ADEA by subjecting Mr. Martin to a hostile and harassing work environment, criticizing and/or reprimanding Mr. Martin in retaliation for raising protected concerns, and the termination of the Plaintiff's employment

246.    The Defendant unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Martin' exercising of, or enjoyment of, one or more rights granted by the ADEA.

247.    The Defendant acted willfully with malice and/or with reckless indifference to the federally protected rights of Mr. Martin.

248.    As a direct and proximate result of the Defendant's violations of the ADEA, Mr. Martin has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

249.    Mr. Martin seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated damages, attorneys' fees, interest, and costs.

## COUNT XIII
### (Retaliation for Engaging in Protected Activity in Violation of New York State Human Rights Law, Executive Article 15, Section 296)

### Plaintiff v. All Defendants (Waste NY, Waste US, and Waste Inc.)

250.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

251.    Mr. Martin engaged in protected activity under the New York State Human Rights Law ("NYSHRL"), including, but not limited to, opposing, expressing protected concerns about, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Martin's age, disabilities, and because he engaged in protected activity.

252.    Mr. Martin additionally engaged in protected activity under the New York State Human Rights Law ("NYSHRL"), by, requesting and/or utilizing disability-related reasonable accommodations.

253.    Defendants discriminated against and/or retaliated against Mr. Martin for engaging in activity protected under the NYSHRL, by subjecting Mr. Martin to adverse employment actions, including, but not limited to, subjecting Mr. Martin to a hostile and harassing work environment, criticizing and/or reprimanding, improperly denying vacation time in a disparate manner, and the termination of Mr. Martin's employment, in retaliation for raising protected concerns and requesting and/or utilizing disability-related accommodations in a manner that constituted unjustified discipline, and the termination of the Plaintiff's employment

254.    Defendants acted with willful and/or reckless disregard to the state protected rights of Mr. Martin.

255.    As a direct and proximate result of the Defendants' violation of the NYSHRL, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

256. The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT XIV

### (Retaliation in violation of N.Y. Lab. Law § 215)

**Plaintiff v. All Defendants (Waste Connections NY, Waste US, and Waste Inc.)**

257. The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

258. At all relevant times, the Company was an employer under the definitions of the New York Labor Laws, including N.Y. Lab. Law § 215.

259. Mr. Martin engaged in protected activity under N.Y. Lab. Law § 215, including by utilizing leave protected under state and/or federal law and/or by raising protected concerns regarding discrimination and retaliation. This included utilizing leave protected by the FMLA, as well as by federal, state, and city disability laws.

260. The Company retaliated against Mr. Martin for engaging in activity protected under N.Y. Lab. Law § 215, by subjecting him to adverse actions, including, but not limited to, subjecting Mr. Martin to a hostile and harassing work environment, criticizing and/or reprimanding, improperly denying vacation time in a disparate manner, and the termination of

Mr. Martin's employment, in retaliation for raising protected concerns and requesting and/or utilizing disability-related accommodations, and the termination of the Plaintiff's employment.

261.    As a direct and proximate result of the Company's violation of N.Y. Lab. Law § 215, Mr. Martin suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

262.    Mr. Martin seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT XV

**(Retaliation for Disclosing to One or More Supervisors Policies or Practices of the Company Mr. Martin Reasonably Believed Violated a Law, Rule, or Regulation, in Violation of New York Labor Law, Section 740)**

**Plaintiff v. All Defendants (Waste Connections NY, Waste US, and Waste Inc.)**

263.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

264.    Mr. Martin disclosed to one or more supervisors policies or practices he reasonably believed violated the NYSHRL, the ADA, the ADEA, Title VII, the FMLA, and other laws, including practices involving discriminating against him due to his disability, age, and race, retaliating against him for engaging in protected activity, harassing him and subjecting

him to a hostile work environment based on his protected classes, retaliation for using New York Paid Leave, and wrongfully terminating him based on his protected classes.

265.    Defendants discriminated against and/or retaliated against Mr. Martin for disclosing policies or practices he reasonably believed violated the law to one or more supervisors by subjecting Mr. Martin to adverse employment actions, including, but not limited to, subjecting Mr. Martin to a harassing and otherwise hostile work environment (including harassing comments about his age and disabilities), subjecting Mr. Martin to differential treatment, and/or terminating Mr. Stevens's employment.

266.    Defendants acted with willful and/or reckless disregard to the state protected rights of Mr. Martin.

267.    As a direct and proximate result of the Defendant's violation of the NY Labor Law Section 740, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

268.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), attorneys' fees, interest, and costs.

**COUNT XVI**

**(Retaliation in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (Waste NY, Waste US, and Waste Inc.)**

269.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

270.    Mr. Martin engaged in protected activity under the NYCHRL, including, but not limited to, opposing, expressing protected concerns about, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Martin's age, disabilities, and because he engaged in protected activity.

271.    Mr. Martin additionally engaged in protected activity under the NYCHRL by requesting and/or utilizing disability-related reasonable accommodations.

272.    Defendants discriminated against and/or retaliated against Mr. Martin for engaging in activity protected under the NYCHRL, by subjecting Mr. Martin to adverse employment actions, including, but not limited to, subjecting Mr. Martin to a hostile and harassing work environment, criticizing and/or reprimanding, improperly denying vacation time in a disparate manner, and the termination of Mr. Martin's employment in retaliation for raising protected concerns and requesting and/or utilizing disability-related accommodations in a manner that constituted unjustified discipline, and the termination of the Plaintiff's employment

273.    Defendants acted with willful and/or reckless disregard to the city protected rights of Mr. Martin.

274.    As a direct and proximate result of the Defendants' violation of the NYCHRL, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

275.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

WHEREFORE, the plaintiff, Anthony Martin, respectfully prays that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendants liable on all counts;

C.  Award the Plaintiff his lost compensation and benefits (including, but not limited to, back pay and front pay);

D.  Award the Plaintiff other monetary damages, including damages for his diminished earning capacity and injury to reputation;

E.  Award the Plaintiff damages for his emotional pain, mental anguish, loss of enjoyment of life, suffering, and other emotional distress damages;

F.  Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G.  Award the Plaintiff liquidated damages;

H.  Award the Plaintiff punitive damages;

I.  Reinstate and restore Plaintiff to his position at his former seniority, responsibilities, and pay level;

J.  Award the Plaintiff his reasonable attorney's fees;

K.  Award the Plaintiff interest and costs;

L.  Award the Plaintiff all other damages to which he is entitled; and

M.  Grant such further relief as is just and equitable.

Respectfully Submitted,

ANTHONY MARTIN

By his attorneys,

THE LAW OFFICES OF WYATT
& ASSOCIATES P.L.L.C

Date:   July 8, 2026                           By:       /s/Katelynne Stockwell_____

Katelynne Stockwell
katelynne@wyattlegalservices.com
NY State Bar: 615179

Benjamin J. Wyatt
BWyatt@Wyattlegalservices.com
NY State Bar: 5604590

Timothy Brock
tbrock@wyattlegalservices.com
NY State Bar: 5614151

Main Office:
The Law Offices of Wyatt & Associates,
P.L.L.C.

17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868

New York Office:
The Law Offices of Wyatt & Associates, P.L.L.C.
69 State Street, 13th Floor, Suite 1320
Albany, NY 12207